I'd like to reserve three minutes for rebuttal if I may. Thank you. I'd like to focus today on two of the issues laid out in our briefs and rest on our briefs as to the 404B issue, not intending at all to imply by that that we don't feel strongly about that issue, but just that the other two I think require a little more discussion. So I'm going to focus first on the question of the search of Mr. Abbott and the suppression motion and then move to the sentencing issue. Kevin Abbott in this case was searched without a valid warrant and without sufficient probable cause for his arrest. The language of the warrant is important because it calls for the search of all persons present who may be concealing narcotics or other illegal contraband. The warrant in essence is no different from a straight up all persons present type of warrant because it provides no criteria really for distinguishing between those who may be concealing narcotics and those who are not and the officers didn't apply it in any kind of limited way in any event. The underlying affidavit in support of the warrant did not provide any basis for the search of any persons there besides Michael Grant who was very specifically described and was the co-defendant who had been seen by the confidential informant. So there's nothing in the affidavit whatsoever to support the all persons language in the warrant. Is it clear from the affidavit that this is a drug house or a drug stash house? I don't believe it. Or a place where drugs are being sold on a routine basis? There's nothing in the affidavit that supports the notion of a drug stash house or the suggestion that this is a house that's used exclusively for or even primarily for the storage and sale of drugs. There is information in the affidavit that says they have observed an individual going in and out of this location, this house, in connection with the sale of drugs and that often if someone is seen selling drugs and going in and out of a house, it makes sense that that person might be storing drugs there as well. But doesn't it do more than make sense? Doesn't it state it? It does state it. The affidavit does state that. So if you read the affidavit, you would think it would, there's a drug, it's a place, it's a house from which drugs are stored and sold. Yes, but it is not evident that that makes it a drug stash house or a place where you could assume that everyone there is likely to be involved in the criminal activity. Well, is that a standard that's unreasonable, though? Can you ever be sure that everybody in the house is selling drugs? I don't think the standard requires that you be sure that everyone in the house be selling drugs, but the affidavit has to support a sufficient nexus of probable cause to the individuals in the house who are to be searched. And there's nothing in this affidavit to suggest that there may be innocent bystanders or family members, that this isn't also a residence. It turns out, of course, after the fact that there was nobody else there except Kevin Abbott, but that's not the test. The test isn't what was discovered later. The test is what was presented to the judge in support of the warrant. So you're saying that the judge should not have issued the warrant on the basis of the information that was given to him at that time? As to the premises, I think there's sufficient support in the affidavit for a warrant for the search of the premises. All right. But there's nothing in the affidavit to support the search of all persons who may happen to be at the premises. Is an all-persons warrant, is that always suspect in your view, or just sometimes is that valid? I think the cases draw a distinction and require more than just a statement of, you know, that all persons present may be searched. And that's what this warrant amounts to. It requires that there be a showing of probable cause as to the individuals who would be searched under that kind of broad language. So you can have a warrant that allows the search of unnamed people who may be found at the residence, but you have to have probable cause as to those people. And there's no support for that in this warrant. I just want to touch briefly on the good faith exception, because that is the government's next response to the invalidity of the warrant. The government argues that the officers executing the warrant were entitled to rely on that language, even though the warrant is not supported by probable cause as to the other individuals besides Michael Grant. First of all, the officer who obtained the warrant, who wrote it up, put it in front of the judge, swore out the affidavit, is the same officer who led the raid. And so he knew that what he had asked for was less than what was provided for in the warrant. The analogy that comes to mind is that of the ATM that gives you an extra hundred. Would you just say again what you just said? Yes. He knew what? He should have known, or he knew, that the warrant allowed a greater search, that is a search of all persons there, than what he had asked for in the affidavit. Okay, but he had a warrant, and under the warrant, wasn't he entitled to search all persons there? Under the language of the warrant? Under the leading case on the good faith exception, United States v. Leon from the U.S. Supreme Court, if the warrant is based on an affidavit that is lacking probable cause... But it wasn't lacking probable cause. It wasn't to be all persons. There was enough in the affidavit from which one could assume that this was a house where drugs were sold. Grant went in. I mean, people came up to Grant. Grant's on the sidewalk. People came up to Grant. And he went into the house, and he came back with something that he gave them, which turned out to be narcotics. And anybody, any policeman who sees this activity will know that they're not going in to sell bird eggs, right? Right. So there was probable cause. We're not challenging the warrant insofar as it authorized a search of the premises. It's clear that the affidavit... Well, all right. You know, to me, the sentencing issue is more important. Okay, all right. Will you spend your time wherever you want? No, no, that's fine. I'll move along unless the other judges have questions on the probable cause analysis. All right. The sentencing issue is a little bit less convoluted, frankly. There are really only two cases. Less convoluted? I think it's simpler. There are two key cases at the end of the day that are really relevant here. And that is the circuit split between Studefin... The second and the seventh. Well, actually, the Seventh Circuit, I would submit, is not as directly on point here. Because that case does not confront a situation where the individual is subject to double counting for a firearms offense. Let me back up a little bit. The line of cases that deals with the except, as provided by another provision of law language in 924C, goes back to the Eighth Circuit in Alaniz. And that court drew a very careful distinction to say that the accept clause, the greater minimum sentence, applied to firearms punishments. So that if you are subject to punishment for the firearms offense under some other provision of law, you then, the accept clause kicks in and you cannot be sentenced to the additional five years. None of the subsequent circuits, the First, Fifth, Sixth, and Seventh, had to confront that issue squarely. The only courts that have had to are the Studefin Court out of the Fourth Circuit and the Whitley Court in the Second Circuit. Both of which confronted the exact same situation presented here, which has the individual sentenced to a 15-year mandatory minimum under the Armed Career Criminal Act, and potentially another five years under 924C. Based on what the individual did with the weapon, right, the firearm? Well, the element, the key element of both crimes is possession of a firearm. Well, under this section at issue here, it has to do with more than just possession. It's the five, seven, and ten. If you brandish, it's seven. If you fire, it's ten, even if you hit yourself, which I think is a wonderful case. Maybe Studefin, I'm not sure. Isn't it a standalone crime? The five-year punishment, which is the one at issue here, is for possession. But the crime, we're talking about the crime that's 924C1. That's a crime. Yes. Okay? And just by itself, it's a crime. Right, possession of a firearm. Possession or brandishment or discharge. Right. Okay. So why shouldn't that crime, the sentence of which is set forth in the statute, be subject – why shouldn't the government be able to add that, or the district judge add that, to whatever the underlying crime is? It's because of the language at the very beginning of 924C, which says except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law. It's the any other provision of law language that's really key here. Congress thought when it enacted this in order to correct what it thought was correct, was it Bailey, the Supreme Court? Yes. To correct Bailey. It thought that it was taking away the extra amount of punishment? It's not that so much as that I think Congress recognized – No, no, it is. Well, my question is that. I mean, do you really think that Congress intended to lighten the sentence of the defendant? Congress, I think, recognized that it was greatly expanding the potential sentences under 924C. It was expanding the scope of that statute, and therefore more likely to run across the double-counting problem that this case and Whitley and Studefin presented where – Why is it double-counting? Because Mr. Abbott is being sentenced to 15 years for possession of a firearm under the Armed Career Criminal Act. He's being sentenced because he is an armed career criminal. That is one of the elements, but that element relates only to his status. It doesn't relate to a substantive component of the offense. The offense at the bottom is a possession of firearm offense, as is 924C. Good. And anything else you want to tell us about this? I just urge the Court to look closely at Studefin and Whitley because Studefin actually misread the statute to be the old version of the statute, not taking into account the possession problem presented by the 1998 amendments. So in our view, Whitley provides the better analysis. If he had brandished the firearm or discharged it, would it be double-counting? If you get into subsection little 2 and little 3. It may or may not be. It depends on whether there's another provision of law that punishes that conduct to which the individual is subject. You know, in this case, he's looking at two different sentences, both for possession of a firearm, in essence. Well, is it in essence? I mean, the ACCA is different, isn't it? The ACCA is an enhancement. It's an enhancing statute that enhances your sentence because of your status as a prior offender. It's a statutory enhancement. Yes, it's a statutory enhancement. Right. And that was the only other point I wanted to make, is that the illogical results are Congress's intent to, first of all, under plain reading of the statute, you don't need to get to Congress's intent, but understanding that the fact that we're here may suggest that it's not that clear cut. I think that there may be a double jeopardy problem, which is what Congress was trying to address with this provision. And also, the illogical results presented or theorized by the government that an individual might be subject to a lower sentence is not necessarily the case. The district judge, of course, retains the discretion to impose the maximum sentence or not impose them concurrently, or increase the sentence under the guidelines. So it's not a given that people will get a lesser sentence under our reading of the statutes. Thank you very much, Ms. Battle. We'll have you back on rebuttal. Ms. Abrams? Good afternoon. Good afternoon. Thank you. May it please the Court, my name is Elizabeth Abrams, and I represent the government as appellee in this matter. And as the Seventh Circuit stated in the Easter decision, resolving the correct interpretation of 924C is a matter of common sense, and the reading proffered by the government is the most natural reading of the statute, and accordingly the reading that should be upheld by this Court. What does the accept clause mean? The accept clause, Your Honor, means that if there is a different provision of law punishing the conduct outlined in 924C that provides a higher mandatory minimum sentence, then that higher sentence should be imposed. So the 924C, defining as it does a stand-alone crime, and not the same crime as defined in 922G as counsel for the appellant apparently believes, the 922G crime enhanced in this case as sentenced under 924E is for mere possession of a firearm. Some persons are simply prohibited from having firearms, such as the defendant in this case. 924C does not extend only to people who are prohibited from having weapons, and it punishes the additional factor that the weapon in question is used in furtherance of a violent or drug-trafficking crime. Those elements have nothing to do with 922G, and that is why the circuits, having addressed it, have found no double jeopardy problem with charging both of those same statutes and punishing separately. Judge Newman didn't talk about double jeopardy, did he? No. There have been cases such as the Alanis decision. Some of the circuit cases were double jeopardy. Let's take Judge Newman, the Second Circuit. Yes. What's wrong with his analysis? His analysis, Your Honor, broadens and treats as sentencing enhancement 922G by broadening that except clause language and stating that the literal meaning is something against the congressional intent. Well, he says that it's missing some language that the government wants us to imply, right? That is what the Second Circuit decided, but the government disputes that position. Well, I know that. That's why you have two sides before us, but I'm trying to figure out why your side is right. I mean, literally, according to the language, isn't he right? Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law. Your Honor, but that takes out of context, out of the entire context of 924C1, that first initial except clause, because the entire- What do you mean by takes out of context? We're talking about that except clause. Yes. The entire, the except clause is part of the substantive offense-defining language of 924C1. And the punishment that is referred to should be understood to be the punishment for that offense defined by 924C1 and not for any other crime which could be anything charged in conjunction with a 924C. I just don't understand what you said, but maybe my colleagues do. It would have been more helpful if they explained except to the extent a greater minimum sentence for what, right? You're telling us the for what is this particular statute, but that's not what it says. I agree that- Yes, I agree that it is not as clear as it could be. However- Or as it is. Your Honor, to the extent that the language creates an incongruity, there's incongruity on both sides. And in such an instance, the Supreme Court in Caron has stated that where either reading creates incongruities, the reading that the court should adopt is the one that yields results in line with the likely rational congressional intent of the statute. Yes, why shouldn't we apply the rule of lenity? It's a criminal case. The rule of lenity should apply if, after application of all those other kinds of factors, such as the plain reading of the statute, the review of congressional intent, if that fails to resolve ambiguity, then the rule of lenity would apply. But in this case- What's the ambiguity? Well, Your Honor, as many circuit courts have reviewed the case, they have all found it unambiguous. However, they have reached opposite conclusions. In the opinion of the government, the language is not ambiguous. However, if it were construed as being- But you just told us that in light of the ambiguity, we should get- There can be incongruities in application of either position, that the defendant would state that it's incongruous, that the government's position is incongruous with this broad end of the Accept Clause language. And, in fact, the defendant's reading creates greater incongruities, as it would have this court treat the offense, a standalone offense, as simply a sentencing enhancement for a gun-related crime. Now, there's no principle basis based on the language in the statute to limit it solely to gun crime. It seems that if one were to take the position that the literal language meant, except to the extent any other greater minimum sentence applies from any other provision of law, there is no rational basis or no principle basis for limiting that solely to gun crime. It should apply to drugs or any other crime in which Congress has prescribed a mandatory minimum sentence. And the defendant's construction ignores the statutory purpose of the statute, which this court recognized in Walker, was to have persons committing federal crimes to leave their guns at home. So the entire purpose of the act, to discourage the use of firearms in commission of federal crimes, is thwarted by the defendant's reading because there is no incremental punishment, contrary to the express congressional intent, for use of the crime, if one is charged with a crime that has a mandatory minimum sentence. So a person who is going to deal drugs, say in excess of 50 grams of crack cocaine, may as well take a gun and strap a gun to his side because there is no extra punishment for using that gun to intimidate others or simply to possess it in furtherance of the drug dealing. And that is against the intent of Congress in passing this scheme of mandatory consecutive punishment. Now in the Walker decision, again, this court upheld in that decision a 55-year mandatory sentence because there were three separate 924C charges that were sentenced. And under the defendant's reading, that would actually be an incorrect result because the 55 years resulting from one 5-year and two subsequent 25-year sentences would be knocked down to 50 years by the defendant's reading because a greater minimum does apply to a different charge. Were those guideline sentences or statutory minimum sentences? That was the statutory minimum provision part of the sentence that was imposed because there were three 924Cs that were proven and of which the defendant was convicted. I'm not sure if it was at trial, but he was convicted of all three at the same time. Sentenced to, therefore, whatever his sentence was on underlying crimes plus 55 years. And he challenged that on a number of bases, not one of which was the accept clause. However, I just want to point out that the defendant's construction would make that an incorrect sentence because the 5-year mandatory consecutive would fall away based on the imposition of two 25-year mandatory consecutive sentences. Other logical problems arise from the application of the defendant's theory, one of which is that if I understand correctly, the defendant is urging that in some instances such as his own, his sentence for a 924C violation would, there would be no sentence. And in that case, he would be convicted of a crime but face no punishment for it. No concurrent punishment because that is not allowed by the statute. And no, apparently no punishment whatsoever would be an acceptable result under the defendant's reading of the statute. But doesn't Congress have a right to do that? Can't Congress pass a law that says if you commit this crime, you're subject to the following penalties, but none of the penalties will be imposed if you suffer a more severe penalty through another statute? Well, this is not a situation of a lesser included offense. And although the Seventh Circuit also took the position that a judgment of conviction with no sentence is not actually a judgment of conviction, and it does go against the wording of Section 3551, which states that a person convicted of a crime shall be sentenced. And this would be a conviction of a crime with no sentence. Well, but people get concurrent sentences all the time. That's correct. But in this case, with this statute, 924C1D2. There's no concurrent sentence. Specifically prohibits a concurrent sentence. But right on the same page at the top, it says any other provision of law. Don't we have one of these situations where the plain language can suggest two different results? If you look at each section in a vacuum, if I look at the accept clause in a vacuum, it would seem to favor Mr. Abbott's argument. If I look at D2 in a vacuum, it would seem to favor your side. But don't we have to try to harmonize the two? Well, Your Honor, I would disagree that C1D2 only applies to a mandatory minimum sentence being imposed. I believe that that would apply to any, based on the language of the statute, that it can be read as applying to any sentence of incarceration imposed pursuant to 924C, whether a mandatory minimum sentence or any other kind of sentence. So, therefore, I would disagree that the accept clause would take, would moot the application of 924C1D2. The no concurrence section or language would seem to point to only one interpretation. Is that your position? Yes, Your Honor. I think that it points out the clear congressional intent in this instance to have mandatory incremental punishment for those who would use a gun in furtherance of a federal crime, a drug trafficking or violent crime. And in addition, Congress also took the step of stating that there can be no probation sentence for this violation. And instead of a probation sentence, defendant would have no sentence imposed whatsoever, an even more lenient result than no probation. So mandating incarceration and mandating that it be served consecutive to other sentences imposed points to the clear congressional intent in this case to punish gun crime, and some may believe harshly, but to punish it as Congress deemed fit and stated clearly in the statute. Now, and under, I would also like to point out that under Mr. Abbott's formulation or the Second Circuit's opinion in Whitley, even were Mr. Abbott not an armed career criminal, he would still face no punishment under his formulation for his, for his use of the gun because he also faced a 10-year mandatory minimum on the drugs that he had. Why don't you spend a minute on the search warrant here? Yes, Your Honor. The all persons present warrant in this case was valid for the stash house. The affidavit of probable cause did clearly state that it's a stash house. And in United States v. Peep and also in law of the Commonwealth of Pennsylvania, one is entitled to assume that persons present at a location such as a stash house are participants in a conspiracy or there is probable cause to believe that they are participants. Defendant says that this defendant was not, that he was not named in this. Does that make any difference? No, Your Honor, it doesn't make any difference that the defendant himself was not named in the warrant because the, first of all, because it was a valid warrant issued and there was probable cause to believe that it was a drug stash house. And second of all, because even were that not the case, the officers would have a good, would have a good faith basis to believe under Pennsylvania law that this, that the presence of the defendant in this location, a stash house location, would be the defining characteristic of giving them probable cause to search his person. In addition, this is not an Ibarra situation as the defendant is arguing. This is not a public place. This is a place known to be the locus of drug sales and storage of drugs. And because of that, because the police were reasonably permitted to believe that he was part of a drug distribution conspiracy, they did, the warrant is valid as to Mr. Abbott. Are there any limitations to an all-persons warrant? Yes, Your Honor. Or is it always valid? There, no, an all-persons warrant is not always valid. It would, it would be constrained to those kinds of locations, such as a drug stash house, where the illegal activity that is going on is, is open and known to the people who are there. Or such as, say, a gambling, a gambling operation or other illegal activity where the, it's logical to assume that the persons permitted into the premises are being let in on the activity that is taking place there. In addition, that under Pennsylvania law, the people must be defined, cannot be defined by, necessarily by their activities at the scene. It must be defined by their presence at this very particular kind of location, a location where illegal activity is, there's probable cause to believe that the illegal activity is, that all persons present would be aware of the illegal activity happening in the location. Good. Any questions? Good. Ms. Abrams, thank you very much. Thank you, Your Honor. Ms. Petal. Thank you. Starting with the sentencing issue, there is no ambiguity. Section 924C is very clear. And the cases that try to finesse it or limit it in some way read into it. They put language in it that isn't there to suggest that it only applies to sentences under this particular statute or sentences that may be covered by some future legislation that hasn't yet been passed. But 924C is clear. It provides that if any other provision of law imposes a greater minimum sentence, then this provision does not require an additional sentence. Now, the government raised the question. I'm sorry. Let me just interrupt you for a minute because I want to make sure I appreciate the implication of your argument. As I understand it, if somebody is convicted of a drug crime under 846 or 841, and there's a 10-year mandatory minimum, and they're charged also under 924A2 for brandishing, that person, and they're guilty, that person does a mandatory minimum of 17 years, correct? Yes. Ten years for the drug crime and seven years under 924C. And that's a man who's not an armed career criminal. Right. But if the man is an armed career criminal and he commits the exact same two offenses, he does 15 years, two years less. Let me think that one through for a second. Seven years for the brandishment. Seven years for the drug, seven for the brandishment. Not necessarily because the – well, let me back up. First of all, this Court doesn't have to reach the question today of whether, except by any other provision of law, language covers any minimum sentence under any other statute. But his question is really a very apt one. How do you answer it? The – and you know my follow-up is if you discharge and you get 20, right, 10 for the drugs, 10 for the discharge, that's a mandatory minimum under the statutes of 20 years, right? But if you're an armed career criminal, you do 15. Because you say they can't – It seems to me your argument is putting an armed career criminal on a privileged position vis-à-vis someone who's not yet deemed an armed career criminal. I don't think so because I don't think under the line of cases I was directing your Honors to before that the crimes match up in precisely the same way. If the individual is being punished under another statute for the same conduct that's captured by 924C, which is a gun statute, it's a firearm statute, then the except provision would apply. But in the scenario that you're describing, I'm not sure that that's the case. Because the 10-year mandatory minimum would apply to the drug crime, and the seven years or the 10 years would be for the use of the firearm. So I'm afraid I'm not sure I understand exactly what your question is. It's not the same crime in that instance. I'm just – I'm positing someone who's not an armed career criminal who gets hit with a 10-year mandatory minimum for a drug crime, and then a 924, they get hit with a seven-year mandatory minimum or a 10-year mandatory minimum, and that those run consecutively. The non-armed career criminal, the person with less criminal history, does a statutory mandatory minimum of 17 or 20 years. Whereas in your case, you're saying because your client is an armed career criminal, he has to be capped at 15. But then he wouldn't be subject to a greater minimum sentence. I don't understand the answer. I don't either. Okay. I mean, I think under the scenario you're describing, the minimum sentence would be – the minimum sentence required would be 17 years as opposed to – and so that would outweigh the 15 years under the armed career criminal law. Good. Any other questions? Ms. Battle, thank you very much. Thank you. The case was well argued.